INTERNATIONAL TERMINAL OPER-
ATING CO., INC., Plaintiff,

v.

SKIBS A/S HIDLEFJORD and Skibs A/S Byfjord and S. S. PUNA, Defendants.

No. 72 Civ. 418.

United States District Court,
S. D. New York,
Civil Division.

Oct. 1, 1973.

Alexander, Ash, Schwartz & Cohen, New York City by Joseph Arthur Cohen, New York City, of counsel, for plaintiff.

Haight, Gardner, Poor & Havens, New York City by M. E. DeOrchis, New York City, of counsel, for defendants.

## MEMORANDUM AND ORDER DISMISSING COMPLAINT

WHITMAN KNAPP, District Judge.

Defendants who are Norwegian shipowners move to dismiss this action brought by a stevedore for compensation for services performed on defendants' vessel the S.S. Puna, on the ground that neither in personam nor in rem jurisdiction exists.

Plaintiff conceded at oral argument that on the present record no predicate for jurisdiction has been established. or even alleged, but takes the position that discovery in some form should be permitted in the hope that some such predicate will emerge.

Defendants on the other hand contend that where the complaint and supporting affidavits fail to set forth a single fact that might tend even to call into question the sworn denial by defendants' lawyer (on information and belief) of the existence of any such facts, plaintiff has failed to reach the threshold level at which discovery should be permitted.

Defendants were served with process by registered mail in Norway. Such extraterritorial service is effective to give a district court in personam jurisdiction only if authorized by the state in which the court sits. F.R.Civ.P. 4(e). New York CPLR § 313 permits extraterritorial service only if in personam jurisdiction exists over the non-resident defendant by virtue of CPLR § 301 or § 302. § 301 preserves common law sources of in personam jurisdiction, including a corporate defendant's presence in the state by virtue of its "doing business" here; § 302 is New York's long-arm statute.

The complaint alleges that "defendant is a foreign business entity pursuant to the laws of Norway." It further alleges that "the S.S. Puna is now or during the pendency of this action will be within the jurisdiction of the United States and of this Honorable Court." The latter allegation apparently is intended to mean that the vessel is or will be amenable to "arrest" for the purpose of acquiring in rem jurisdiction pursuant to the Supplemental Rules for Admiralty and Maritime Claims, F.R.Civ.P.

The complaint itself thus contains no allegations on which in personam jurisdiction can hinge. The affidavit submitted by plaintiff's counsel however states that the vessel was docked at Port Elizabeth, New Jersey while the work in question was performed, and that Port Elizabeth is within the jurisdiction of this court.

This allegation is relevant only to the question whether the long-arm statute can successfully be applied by plaintiff

CPLR § 302(a)(1) provides:

As to a cause of action arising from any of the acts enumerated, . . . a court may exercise personal jurisdiction over any nondomiciliary who . . . :

(1) transacts any business within the state.

█ This is the only provision of the long-arm statute which could conceivably be applied to plaintiff's cause of action. To apply it, plaintiff would have to show that work done in Port Elizabeth—where the S.S. Puna was docked when plaintiff claims to have done the work giving rise to plaintiff's cause of action —somehow amounted to a transaction of business in New York. Plaintiff seems to base this claim on the theory that Port Elizabeth is within the "Port of New York."

However, the treaty governing the respective boundaries of New York and New Jersey, signed in 1833 and ratified by Congress in 1834, provides in relevant part:

"The State of New Jersey shall have the exclusive jurisdiction of and over the wharves, docks and improvements, made and to be made on the shore of the said State, and of and over all vessels aground on said shore, or fastened to any such wharf or dock; except that the said vessels shall be subject to the quarantine or health laws, and laws in relation to passengers, of the State of New York, which now exist or which may hereafter be passed."

Article Third, Section 2, Act approved June 28, 1834, ch. 126, 4 Stat. 708. See also In re Devoe Manufacturing Co. (1883) 108 U.S. 401, 2 S.Ct. 894, 27 L. Ed. 764.

Thus in the court's view there is no conceivable theory by which New York long-arm jurisdiction could be achieved. There remain two other possible sources of jurisdiction: 1) Defendants' symbolic "presence" in New York by virtue of their systematically doing business here or 2) rem jurisdiction to be acquired by "arrest" of the vessel pursuant to the Supplemental Rules for Admiralty and Maritime Claims, F.R.Civ.P.

█ As to the corporate presence test, as already indicated plaintiff raises not the slightest suggestion that defendants are in fact "doing business" in New York, but seeks to investigate that contingency. My reading of the cases yields no support for the position that the court should encourage a fishing expedition to discover the possible presence in New York of a foreign corporation where absolutely no issues of fact on that subject or their interpretation are in dispute, and all there is to pursue is a plaintiff's fanciful hope. Cf. Gelfand v. Tanner Motor Tours, Ltd. (2d Cir. 1964) 339 F.2d 317 [plaintiffs alleged three possible routes to in personam jurisdiction; three tangents between defendant and the state of New York], King v. Tire Mart, Inc. (Sup.Ct. Special Term 1958) 15 Misc.2d 546, 182 N.Y.S. 2d 395 [where affidavits of parties conflict, plaintiff claiming that defendant had a place of business and telephone listing in New York, testimony should be taken], Tokyo Boeki (USA), Inc. v. S.S. Navarino, (S.D.N.Y.1971) 324 F. Supp. 361 [issue was whether to pierce the corporate veil; subsidiary of third party defendant was clearly present in New York and issue was the nature of that company's relationship to the third party defendant; thus clearly additional affidavits and a deposition were in order], Maryland Tuna Corp. v. MS Benares (2d Cir. 1970) 429 F.2d 307 [corporate veil].

Research has failed to unearth any case in which a plaintiff was permitted to conduct discovery in an attempt to find a basis for in personam jurisdiction where there is not the slightest factual indication that such a basis might exist. Furthermore, where in personam jurisdiction over a defendant foreign corporation is predicated upon its presence by virtue of its doing business here, and where "doing business" has been judicially construed as a matter of constitu-

tional law to require sustained and continuous contacts with the jurisdiction, common sense indicates that some sign of the defendant's presence—whether ultimately controlling or not—would have revealed itself to plaintiff. Apparently there is no sign whatever of defendants' in this action in New York.

The final possible source of jurisdiction would be in rem, to be accomplished if and when the res—the S.S. Puna—enters this jurisdiction. Plaintiff alleges in its complaint that the vessel "will be" present here, and defendant denies it. While the court could permit the action to remain dormant until such time as rem jurisdiction might be acquired, it declines in its discretion to do so. See Winpac Corp., Ltd. v. MV Amacuro, 72 A.M.C. 830 (S.D.N.Y.1972 Tenney, J.). Since in admiralty there is no danger that the running of a statute of limitations may irrevocably bar an action, and since laches cannot be raised in the future if the delay has resulted from an inability to acquire jurisdiction, I see no reason to do otherwise. See Gilmore & Black, The Law of Admiralty (1957), p. 624 et seq.

Complaint dismissed for lack of jurisdiction over the person or the res.

So ordered.