991 F.2d 795
 17 Employee Benefits Cas. 1137
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Casimer A. KANIEWSKI, Plaintiff-Appellant,
v.
EQUITABLE LIFE ASSURANCE SOCIETY of the UNITED STATES,
Defendant-Appellee.
 No. 92-3604.
 United States Court of Appeals, Sixth Circuit.
 March 26, 1993.
 
 Before: KENNEDY, MARTIN and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Casimer A. Kaniewski appeals from the summary judgment for defendant Equitable Life Assurance Society of the United States in this action filed under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. On appeal, the issues are (1) whether the defendant is a fiduciary as defined in 29 U.S.C. § 1002(21)(A)(ii) or (iii), and (2) whether the district court erred in granting defendant's motion for summary judgment on plaintiff's claim of equitable estoppel. We affirm in part, reverse in part, and remand.
 
 I.
 A.
 
 2
 Plaintiff Kaniewski was employed by defendant Accurate Die Casting Company ("company") beginning in 1951. Defendant Equitable Life Assurance Society ("Equitable") began providing health and other types of insurance to the company's employees in 1975. At that time, plaintiff and his fellow employees were provided with summary booklets of the group insurance being provided.
 
 
 3
 On January 1, 1977, this situation changed. On that date, the group health insurance policy was terminated, and the company adopted a self-insured plan which was administered by Equitable. As part of the self-insured plan, the company and Equitable entered into an Administrative Claims Service Agreement, which also took effect on January 1, 1977. Under this agreement, Equitable processed health care claims pursuant to the provisions of the company's self-insured health care plan and paid claims out of a special bank account established at Chase Manhattan Bank by the company. The company retained the right to review any benefit award or denial. Equitable advised the company of claims history and the amount necessary to fund the account.
 
 
 4
 However, plaintiff was never informed of this change to self-insurance by the defendants and continued to believe, based on literature received from Equitable, that he had health insurance through Equitable. From January 14, 1985, until April 6, 1985, plaintiff was an in-patient at Windsor Hospital, where he was treated for chronic depression. Plaintiff was also an in-patient at Marymount Hospital from April 18, 1985, to June 9, 1985. Plaintiff's bill from Windsor Hospital totaled $22,417.19, and his bill from Marymount Hospital totaled $17,825.10. The hospitals confirmed plaintiff's coverage with Equitable prior to his admittance. Specifically, an employee and/or agent of Equitable told Windsor Hospital that plaintiff's hospitalization was fully covered by insurance, subject to his deductible. Windsor Hospital relayed this information to plaintiff, who relied on the information when receiving treatment at both Windsor and Marymount Hospitals.
 
 
 5
 Around this same time, the company declared bankruptcy. Plaintiff's hospital bills were not paid by Equitable because there was no money in the company's account. Plaintiff was a company employee during the time of his hospitalizations.
 
 
 6
 After plaintiff's insurance claims were denied, he was sued by Windsor Hospital and forced to pay the balance in full. Plaintiff also has been making payments on the bill to Marymount Hospital. At the time he filed his brief with this court, $3,557.10 remained due and owing on Marymount's bill.
 
 B.
 
 7
 On October 29, 1985, plaintiff filed an action against Equitable in the Court of Common Pleas of Cuyahoga County, Ohio, alleging breach of contract, promissory estoppel, and fraud. These claims were predicated on Equitable's refusal to pay plaintiff's medical bills. Plaintiff asserted that Equitable, as the claims processor of the company's self-insured health care plan, had a duty to pay his medical expenses. On September 27, 1988, plaintiff dismissed his state court action.
 
 
 8
 On May 13, 1988, plaintiff filed this action in the district court against the company and Equitable alleging a breach of fiduciary duties under ERISA. He also alleged that Equitable was estopped to deny coverage for his claims due to its misrepresentations. A default judgment was entered against Equitable but was subsequently set aside. A default judgment was also entered against the company, and it has not been set aside. The district court also struck plaintiff's demand for a jury trial. On January 30, 1992, Equitable moved for summary judgment. Plaintiff filed a combined motion for summary judgment and a response to Equitable's motion for summary judgment. On May 15, 1992, the district court granted Equitable's motion for summary judgment and denied plaintiff's motion, finding that Equitable was not a fiduciary under ERISA and that estoppel was a state law claim preempted by ERISA. This timely appeal followed.
 
 II.
 
 9
 This court reviews a district court's grant of summary judgment de novo. See Faughender v. City of North Olmstead, Ohio, 927 F.2d 909, 911 (6th Cir.1991). Summary judgment is proper where the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988).
 
 A.
 
 10
 The first issue raised on appeal is whether Equitable is a fiduciary as defined under the ERISA statute, 29 U.S.C. § 1002(21)(A)(ii) or (iii). This definition provides that:
 
 
 11
 [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of plan assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of such plan, or has any authority or responsibility to do so, or (iii) has any discretionary authority or discretionary responsibility in the administration of such plan.
 
 
 12
 Plaintiff argues that Equitable rendered investment advice to the company and, therefore, falls under the second clause of the definition because Equitable advised the company of the amount needed to fund the account from which the claims were paid. Relying on Flacche v. Sun Life Assurance Co. of Canada (U.S.), 958 F.2d 730, 734-35 (6th Cir.1992), Equitable responds that it is not a fiduciary because it performed ministerial functions only. In Flacche, we held that mere payment of claims was insufficient to give the insurer, Sun Life, discretionary control over the management of plan assets or the administration of the plan, and, therefore, Sun Life was not a fiduciary under ERISA.
 
 
 13
 In order to meet the definition of a fiduciary based on the rendering of investment advice, a party must have discretionary authority over funds or give individualized investment advice. See Associates in Adolescent Psychiatry, S.C., v. Home Life Ins. Co. of New York, 729 F.Supp. 1162, 1191 (N.D.Ill.1989), aff'd, 941 F.2d 561 (7th Cir.1991), cert. denied, 112 S.Ct. 1182 (1992). See also Pappas v. Buck Consultants, Inc., 923 F.2d 531, 535 (7th Cir.1991) (professionals giving actuarial advice are not fiduciaries). "Discretionary authority," "discretionary control," and "discretionary responsibility" mean actual decision-making power, not the influence that a professional has over the trustees of an ERISA plan he advises. Id.
 
 
 14
 In this case, although Equitable paid the claims out of the special bank account established by the company and advised the company of the amount of money necessary to fund the account, the company retained the right to review benefit awards or denials made by Equitable. Thus, the actual decision-making power over awards or denials was held by the company, not Equitable.
 
 
 15
 Plaintiff also argues that the case of De Geare v. Alpha Portland Indus. Inc., 652 F.Supp. 946, 961-62 (E.D.Mo.1986), aff'd, 837 F.2d 812 (8th Cir.1988), vacated on other grounds, 489 U.S. 1049 (1989), is distinguishable from this case. In De Geare, the court addressed the question of whether Equitable was a fiduciary under an administrative agreement similar to that entered into between Equitable and the company in this case. The employer in De Geare had entered into the administrative agreement with Equitable to provide for processing of employee claims under a self-insured plan. When benefits under the plan were terminated, the employees sued both the employer and Equitable. The district court held that Equitable was not an ERISA fiduciary because it was merely a claims processor of the self-insured plan, a finding which was upheld by the Eighth Circuit on appeal.
 
 
 16
 Plaintiff argues that De Geare is not applicable here because Equitable has undertaken three administrative duties not present in De Geare, including but not limited to: (1) preparing and delivering claim forms for issuance to eligible employees under the plan; and (2) designing and printing plan documents. However, the Department of Labor, in issuing regulations pursuant to ERISA, has found that duties such as preparing employee communication material, orienting new participants, and advising participants of their rights and options under the plan do not give rise to a fiduciary relationship under ERISA. See 29 C.F.R. § 2509.75-8 (1991). See also Flacche, 958 F.2d at 732-33 (claims processor held not to be a fiduciary under ERISA even though it drafted and issued a "Summary of Benefits Certificate" to employees). Thus, the preparation, design, and distribution of plan documents does not involve a fiduciary relationship.
 
 
 17
 The third administrative duty which plaintiff argues is that Equitable is a fiduciary in this case because it was required to provide "periodic review of claim experience" and "underwriting advice." Plaintiff asserts that this is "investment advice for a fee" which constitutes a fiduciary relationship under ERISA. In Associates in Adolescent Psychiatry, 729 F.Supp. at 1191, the court stated:
 
 
 18
 To hold a person liable for rendering investment advice, a plaintiff must show not only that the person in fact rendered investment advice, but also that he either (1) had discretionary authority or control with respect to selling or buying securities or other property of the plan, or (2) he rendered advice to the plan on a regular basis pursuant to an agreement under which the person was to give the plan individualized investment advice to be used as the primary basis for plan investment decisions.
 
 
 19
 In this case, Equitable provided a statistical analysis of data supplied by the company in order to advise the company of the amount of money it should allocate to the special account at Chase Manhattan Bank in order to fully fund or underwrite its health care plan in the future. A duty to provide statistical advice to determine the amounts to be contributed to a plan does not make the bearer of such advice a fiduciary under ERISA. See Pappas, 923 F.2d at 533-35.
 
 
 20
 Plaintiff also argues that Equitable meets the definition of a fiduciary under the third clause of the statute, because it exercised discretionary authority or responsibility in the administration of the plan. Plaintiff argues that Equitable issued plan summaries that did not inform him of the change to self-insurance by the company and that this was a discretionary act. This argument is meritless because it is the discretionary authority to grant or deny claims that is the crucial factor under the definition of a fiduciary. See Libbey-Owens-Ford Co. v. Blue Cross and Blue Shield Mutual of Ohio, 982 F.2d 1031, 1035 (6th Cir.1993). It is undisputed in this case that the company retained the final authority to grant or deny claims. Therefore, Equitable was properly found not to meet the definition of a fiduciary under ERISA, and we shall affirm as to this issue.
 
 B.
 
 21
 Plaintiff next argues that the district court erred in rejecting his equitable estoppel claim by relying on cases which hold that state law estoppel claims are preempted under ERISA. In his complaint, plaintiff alleged that Equitable should be estopped from denying coverage because it held itself out as an insurer. Plaintiff argues that he is asserting a federal common law claim of estoppel rather than a state law claim and relies on Apponi v. Sunshine Biscuits, Inc., 809 F.2d 1210, 1217 (6th Cir.), cert. denied, 484 U.S. 820 (1987), as authority for the argument that federal common law estoppel may be applied in statutory actions. Equitable responds that Apponi is unpersuasive because it is an action under the Labor Management Relations Act rather than ERISA.
 
 
 22
 The district court relied on Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272, 1275-76 (6th Cir.1991), cert. dismissed, 113 S.Ct. 2 (1992), and Davis v. Kentucky Finance Cos. Retirement Plan, 887 F.2d 689, 696 (6th Cir.1989), cert. denied, 495 U.S. 905 (1990), for the proposition that estoppel claims are not recognized under ERISA and state law claims of estoppel are preempted. In both of those cases, the claims of estoppel were found to be based on state law and preempted. The court in Davis, 887 F.2d at 696, also found that the facts in that case simply did not support a claim of estoppel. Although the court in Cromwell, 944 F.2d at 1277 n. 4, interpreted Davis as foreclosing a claim of estoppel under ERISA this court has in fact applied a federal common law claim of equitable estoppel in an ERISA case. See Armistead v. Vernitron Corp., 944 F.2d 1287, 1300 (6th Cir.1991).
 
 
 23
 In Armistead, there was no fund from which the employee health and life insurance premiums were to be paid, and the only issue was the obligation to pay such premiums. Thus, the court held that under the circumstances where an employee welfare benefit plan, such as health insurance, was at issue, and where the actuarial soundness of the fund was not implicated, the principles of equitable estoppel under the federal common law were applicable. Id. The Armistead holding is directly on point with this case since there is no fund out of which the claimed benefits would be paid, and the only issue is the obligation to pay such benefits. Therefore, we conclude that, under the law of this circuit, this is a proper case for the application of federal common law estoppel under ERISA, and that the court erred in granting summary judgment to Equitable on this claim.
 
 
 24
 Plaintiff also asserts that, based on the uncontested facts, he has established a claim of equitable estoppel and is therefore entitled to judgment. The elements of equitable estoppel under federal common law are:
 
 
 25
 1) conduct or language amounting to a representation of material fact;
 
 
 26
 2) awareness of the true facts by the party to be estopped;
 
 
 27
 3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended;
 
 
 28
 4) unawareness of the true facts by the party asserting the estoppel; and
 
 
 29
 5) detrimental and justifiable reliance by the party asserting estoppel on the representation.
 
 
 30
 Armistead, 944 F.2d at 1298 (quoting Apponi, 809 F.2d at 1217).
 
 
 31
 In this case, plaintiff alleges that Equitable furnished him with literature representing itself as his health insurer and confirmed his insurance coverage to the hospitals involved; that Equitable knew that the company was self-insured; that he had a right to believe that he could act on the representation that he was insured by Equitable; that he was unaware that the company was self-insured; and that he detrimentally and justifiably relied on Equitable's representations in incurring the hospital charges for which he was subsequently found personally liable. Although Equitable did not contest any of these factual assertions in responding to plaintiff's motion for summary judgment, this apparently was because Equitable's response to plaintiff's motion was that as a matter of law the Sixth Circuit did not recognize promissory estoppel actions in ERISA cases. Furthermore, at the time the district court granted summary judgment in favor of Equitable, it dismissed Equitable's motion for further discovery as moot. Thus, contrary to plaintiff's assertion that the facts were uncontested, discovery in this case had not been completed, and it cannot be said with certainty that the facts are uncontested. Accordingly, the district court's grant of summary judgment on plaintiff's federal common law claim of estoppel was erroneous, being contrary to the law of this circuit.
 
 III.
 
 32
 For the reasons stated, the district court's judgment is AFFIRMED to the extent that it found that Equitable is not a fiduciary under ERISA, but it is REVERSED with regard to its grant of summary judgment to defendant on its holding that the federal law of estoppel does not apply in ERISA actions. Accordingly, this case is REMANDED for further consideration consistent with this opinion. However, we do not express an opinion as to the eventual outcome of this case.