STEMCOR USA, Plaintiff,

v.

HYUNDAI MERCHANT MARINE CO., LTD., Stevedores, Inc., Reserve Marine Terminals, Inc., and the M/V Dimitra, her engine, boilers, tackle, etc., in rem, Defendants.

Hyundai Merchant Marine Co., Ltd., Cross-claimant,

v.

Stevedores, Inc. and Reserve Marine Terminals, Inc., Cross-defendants.

No. 99 Civ. 9162(GBD).

United States District Court, S.D. New York.

Jan. 12, 2005.

Herbert B. Halberg, Beck & Halberg, New York, NY, for Plaintiff.

Elizabeth Smith, Mahoney & Keane LLP, New York, NY, for Defendant and Cross-claimant Hyundai Merchant Marine Co., Ltd.

John F. Keating, Jr., Hill Betts & Nash LLP, New York, NY, for Defendant and Cross-defendant Stevedores, Inc.

Thomas D. Toy, Hill, Rivkins & Hayden LLP, New York, NY, for Defendant and Cross-defendant Reserve Marine Terminals, Inc.

## OPINION AND ORDER

DANIELS, District Judge.

Plaintiff Stemcor USA, Inc. ("Stemcor") sues defendants Hyundai Merchant Marine Co., Ltd. ("Hyundai"), Stevedores, Inc. ("Stevedores"), and Reserve Marine Terminals, Inc. ("Reserve") for damages arising from alleged mishandling of cargo shipped aboard the vessel M/V Dimitra ("Dimitra").[1] Hyundai moves to dismiss the complaint based on the forum selection clause contained in the carriage contract between Stemcor and Hyundai. Stevedores and Reserve move to dismiss the complaint for lack of personal jurisdiction. For the reasons set forth below, defendants' motions are granted.

### I.

On June 20, 1998, Stemcor, a Delaware corporation, shipped aboard the Dimitra approximately 13,094 metric tons of hot rolled steel plates from Kemaman, Malaysia to New Orleans. (Am.Compl.¶ 9) The Dimitra was owned, chartered, and operated by Hyundai. (*Id.* ¶ 7) Stemcor was the consignee or owner of this shipment of steel plates (*Id.* ¶ 11), which were in good order and condition before shipment from Malaysia. (*Id.* ¶ 10) They were shipped

---

1. In a cross-claim, Hyundai sues Stevedores and Reserve for indemnification or contribution in the case Hyundai is found liable.

pursuant to Hyundai's bills of lading. (Ex. 1 to Affidavit of Elizabeth Smith ("Smith Aff.")) Once the cargo reached New Orleans on September 7, 1998, it was discharged by Stevedores, a Louisiana provider of cargo loading services for vessels in the Port of New Orleans. (Am. Compl.¶¶ 10, 14) A portion of the cargo was then loaded by Stevedores on barges for shipment to the Chicago warehouse of Reserve, an Ohio provider of cargo loading and storage services. (*Id.* ¶¶ 15, 22) The cargo arrived "seriously contaminated, damaged, impaired in value, and short in quantity." (*Id.* ¶ 10) Stemcor commenced this action for $30,000 in damages against Hyundai and the Dimitra in rem on August 25, 1999. On January 5, 2000, Stemcor amended the complaint to include Stevedores and Reserve as defendants.

## II.

This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333 (maritime and admiralty jurisdiction). On a motion to dismiss for lack of personal jurisdiction, *see* Fed.R.Civ.P. 12(b)(2), "the plaintiff bears the burden of showing that the court has jurisdiction over the defendants." *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996). At the motion to dismiss stage, "all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor...." *A.I. Trade Fin. Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir.1993).

## III.

A. Hyundai

Each of Hyundai's bills of lading contain the following clause:

25. Governing Law and Jurisdiction The claims arising from or in connection with or relating to this Bill of Lading shall be exclusively governed by the law of Korea except otherwise provided in this Bill of Lading. Any and all action concerning custody or carriage under this Bill of Lading whether based on breach of contract, tort or otherwise shall be brought before the Seoul Civil District Court in Korea.

(Ex. 2 to Smith Aff.) Stemcor does not dispute that these bills are the contracts of carriage for the shipments at issue. Hyundai moves to dismiss, contending that this clause requires Stemcor to bring the instant action in Korea.

Stemcor argues first that the clause is "unreasonable" in "that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 33 (2d Cir.1997) (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 18, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)). Foreign forum selection clauses are presumptively valid and "should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Bremen*, 407 U.S. at 10, 92 S.Ct. 1907. In order to overcome this presumption of enforceability, a party which seeks to bring a suit in a forum other than the one designated by the forum selection clause must prove that: (1) the forum selection clause is invalid for fraud or overreaching; (2) the forum selection clause will deprive plaintiff of its day in court due to grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive plaintiff of a remedy; or (4) enforcement would contravene a strong public policy of the forum in which the action was brought. *See Bremen*, 407 U.S. at 15–17, 92 S.Ct. 1907.

At this stage, Stemcor must allege facts to support a prima facie showing that the clause is unreasonable under the

"heavy" standard of *Bremen*. *New Moon*, 121 F.3d at 28–29. However, Stemcor has made no allegation beyond reciting the grounds for "unreasonableness" set forth by the Supreme Court in *Bremen*. Nor does Stemcor present any disputed factual issues regarding the difficulty of litigating in a Korean court or any of the other factors in *Bremen*. *New Moon*, 121 F.3d at 29 ("A disputed fact may be resolved in a manner adverse to the plaintiff only after an evidentiary hearing."). Hence, Stemcor fails to make a prima facie showing that the forum selection clause in Hyundai's bills of lading is "unreasonable" or otherwise unenforceable.

In what appears to be a separate argument, Stemcor contends also that under the clause, it loses the protection of Section 3(8) of the Carriage of Goods by Sea Act ("COGSA"), which governs the liability of shippers and carriers:

> Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this section, or lessening such liability shall be null and void and of no effect.

46 U.S.C.App. § 1303(8).

■ In *Vimar Seguros y Reaseguros, S.A. v. M/V SKY REEFER*, 515 U.S. 528, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995), the Supreme Court held that a foreign arbitration clause in a bill of lading was enforceable and was not prohibited by Section 3(8) of COGSA. Noting that COGSA protects the fact and extent of liability, not the means and costs of enforcing that liability, the Court concluded that ("nothing suggests that [Section 3(8) of COGSA] prevents the parties from agreeing to enforce these obligations in a particular forum.... By its terms, [Section 3(8)] establishes certain duties and obligations, separate

and apart from the mechanisms for their enforcement."). *Id.* at 535, 115 S.Ct. 2322. Put another way, "procedural impediments that make a plaintiff's recovery in a foreign forum more difficult to achieve do not constitute the 'lessening [of] liability' sufficient under Section 3(8) to invalidate a choice of law or choice of forum clause." *Int'l Marine Underwriters v. M/V Kasif Kalkavan*, 989 F.Supp. 498, 499 (S.D.N.Y. 1998) (quoting *SKY REEFER*, 515 U.S. at 534, 115 S.Ct. 2322).

Courts have applied *Sky Reefer* to foreign forum selection clauses as well. *See, e.g., Kalkavan*, 989 F.Supp. at 499 (*Sky Reefer* "also applies to the enforceability of foreign forum selection clauses because the Supreme Court stated '[w]e cannot endorse the reasoning or the conclusion of the [rule in *Indussa Corp. v. S.S. Ranborg*, 377 F.2d 200 (2d Cir.1967),' which holds] that [a] foreign forum selection clause in [a] bill of lading violates § 1303(8) of COGSA"); *Hyundai Corp. U.S.A. v. M/V AN LONG JIANG*, No. 97–3855, 1998 WL 13835, at *1 (S.D.N.Y. Jan.13, 1998); *Tradearbed, Inc. v. M/V AGIA SOFIA*, No. 96–4930, 1997 WL 769525 *Pasztory v. Croatia Line*, 918 F.Supp. 961, 966 (E.D.Va.1996).

Notwithstanding this precedent, Stemcor contends that the extension of *Sky Reefer* to foreign forum selection clauses would cause Stemcor to "lose its COGSA section 3(8) protection against Hyundai" by "lessening [Hyundai's] liability." (*Id.* at 7) Stemcor claims that it "would have no guarantees in a Korean court that its COGSA safeguards would remain intact." (*Id.*)

However, Stemcor fails to substantiate its claim that it will lose its COGSA protection in a Korean court. Plaintiffs in other cases involving the identical clause have asserted (i) the difficulty under Korean law of effecting service on defendants; (ii) the

unavailability under Korean law of an in rem action against the ship;[2] and (iii) the unfairness of a Korean legal rule that permits a plaintiff to sue only one carrier.[3] *See Kalkavan,* 989 F.Supp. at 499; *see also LONG JIANG,* 1998 WL 13835, at *2–3. Stemcor has argued none of these nor any other circumstance to support its contention that litigation in a Korean court will reduce Hyundai's obligations to Stemcor below that which COGSA guarantees. *See SKY REEFER,* 515 U.S. at 539, 115 S.Ct. 2322; *see also Mitsui & Co. v. M/V MIRA,* 111 F.3d 33, 35 (5th Cir.1997) (forum selection and choice-of-law clauses are presumptively valid).

Accordingly, Hyundai's motion to dismiss is granted.

**B. Stevedores**

In admiralty cases, the law of the forum state covers whether a party is subject to personal jurisdiction. *See Klinghoffer v. S.N.C. Achille Lauro Ed Altri–Gestione Motonave Achille Lauro in Amministrazione Straordinaria,* 937 F.2d 44, 50 (2d Cir.1991). Accordingly, New York law governs here.

Stevedores argues that it is not subject to personal jurisdiction in New York pursuant to the New York general jurisdiction statute for parties "doing business" in New York, N.Y. Civ. Prac. L. § 301, and the New York long-arm statute, *id.* § 302(a). Stemcor does not dispute the point as to Section 301. However, Stemcor argues that Stevedores' conduct and relationship with New York satisfies Section 302(a)(3)(ii), which provides:

> As to a cause of action arising for any of the facts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, ... who in person or through an agent ...
>
> 3. commits a tortious act without the state causing injury to person or property within the state, if he ...
>
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y. Civ. Prac. L. § 302(a)(3)(ii).

Specifically, Stemcor claims that "the tortious act of [Stevedores] caused injury to [Stemcor], whose headquarters is in the State of New York at 350 Fifth Avenue." (Mem. of Law in Opp'n to Stevedores' Mot. to Dismiss at 4) Furthermore, according to Stemcor, Stevedores "should have expected that its tort would have consequences to plaintiff in the State of New York" and that it "has substantial revenue from inter-

---

2. There is no indication here that the Dimitra has been arrested or served within the 120–day limit prescribed by Fed.R.Civ.P. 4. *See Int'l Marine Underwriters v. M/V Kasif Kalkavan,* 989 F.Supp. 498, 499 (S.D.N.Y.1998); *Tradearbed v. M/V AGIA SOPHIA,* No. 96–4930, 1997 WL 769525, at *5 (D.N.J. Aug.14, 1997).

3. *Kalkavan* and *Long Jiang* involve the same clause and bill of lading issued by Hyundai. In *Kalkavan,* Judge Rakoff held in response to these arguments that the plaintiff was free to continue its suit in federal district court against the vessel in rem. *See* 989 F.Supp. at 499–500. The other two arguments were obviated by the defendant's stipulation to waive all service of process formalities and assume the responsibilities and liabilities of a carrier under Korean law. *See id.* at 499. In *Long Jiang,* Judge Patterson, responding to the same arguments, rejected the first argument because the Hyundai is "a Korean corporation and can be readily served in Korea." 1998 WL 13835, at *3. As for the availability of in rem actions, he held that "the inability to proceed in rem is not sufficient to require us to set aside the forum clause on public policy grounds." *Id.* at *2 (quoting *Fireman's Fund Ins. Co. v. M/V DSR ATLANTIC,* 131 F.3d 1336, 1338 (9th Cir.1997)). Finally, Judge Patterson concluded that the plaintiff failed to show how Korean substantive law "would be more favorable to Hyundai than COGSA." *Id.*

state and international commerce." In support, Stemcor alleges that Stevedores has "regularly handled steel movements in New Orleans for [Stevedores] during the last five to six years." (Declaration of Herbert B. Halberg, dated Aug. 3, 2000, at 1)

■ In opposition, Stevedores argues first that the alleged injury did not cause "injury to person or property within" New York. Courts

> determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the 'original event which caused the injury.' This 'original event' is, however, generally distinguished not only from the initial tort but from the final economic injury and the felt consequences of the tort.

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 791 (2d Cir.1999); *see also Mareno v. Rowe,* 910 F.2d 1043, 1046 (2d Cir.1990) ("the place of injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff" (citation omitted)); *Cedric Kushner Prods., Ltd. v. Thobela,* No. 93–4592, 1994 WL 163992, at *5 (S.D.N.Y. Apr.22, 1994) ("In applying New York's long arm statute, courts have held the place of the injury to be where the defendant conducted the allegedly improper sale of goods or improperly performed services."). The Court in *Bank Brussels* found that the injury occurred in New York because, under the situs-of-injury test, the "original event" that caused the economic harm to the plaintiff bank was the disbursement of funds and that disbursement took place in New York. 171 F.3d at 792.

Crediting Stemcor's allegations as true, Stevedores' failure to deliver or reload the cargo as requested by Stemcor, (Am.

Compl.¶ 15)—or its recklessness, carelessness, and negligence in doing so (*Id.* ¶ 19)—constituted the "original event." The first effect of that "event" was the damage and loss to the cargo. As to Stevedores, both the "original event" and the damage to the cargo occurred in New Orleans, where Stevedores handled the cargo, or somewhere en route from New Orleans to Chicago. The only effect of the "original event" to occur in New York was the economic injury felt by Stemcor as a result of the damaged and lost cargo. Such consequent economic injury is insufficient to make New York the situs of the injury under Section 302(a)(3)(ii). *See Hartford Fire Ins. Co. v. M/V MSC INSA,* No. 03–2196, 2003 WL 22990090, at *3 (S.D.N.Y. Dec.18, 2003); *Atl. Mut. Ins. Co. v. CSX EXPEDITION,* No. 00–7668, 2002 WL 202195, at *1 (S.D.N.Y. Feb.7, 2002).

■ Moreover, personal jurisdiction cannot be based solely on Stemcor's residence at 350 Fifth Avenue in Manhattan. *See Mareno,* 910 F.2d at 1046 (under Section 302(a)(3)(ii), an injury "does not occur within the state simply because the plaintiff's a resident"). "The occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York." *Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 209 (2d Cir.2001) (quoting *United Bank of Kuwait v. James M. Bridges, Ltd.,* 766 F.Supp. 113, 116 (S.D.N.Y.1991)).

Stemcor has failed to allege the requisite injury under Section 302(a)(3)(ii); hence, the other requirements of the statute need not be addressed. Accordingly, Stevedores' motion to dismiss is granted.

## C. Reserve

■ Likewise, Stemcor claims that Reserve is subject to personal jurisdiction in

New York pursuant to Section 302(a)(3)(ii). The analysis as to Reserve does not differ from the analysis as to Stevedores.[4]

Reserve's alleged failure to "warehouse, store and deliver" the cargo (Am. Compl.¶ 24)—or its "recklessness, carelessness and negligence" in doing so (Id. ¶ 27)—constitutes the "original event" according to the situs-of-injury test. The first effect of that alleged wrongdoing was the damage and loss of cargo. As to Reserve, both the "original event" and the damage to the cargo occurred in Chicago, where Reserve handled the cargo. The only effect of this "event" in New York was Stemcor's economic injury. To reiterate, such injury on its own does not meet the requirements of Section 302(a)(3)(ii). *See M/V MSC INSA*, 2003 WL 22990090, at \*3; *CSX EXPEDITION*, 2002 WL 202195, at \*1. Moreover, jurisdiction cannot be premised solely on Stemcor's New York residency. *See Mareno*, 910 F.2d at 1046.

The other requirements of Section 302(a)(3)(ii) need not be addressed. Accordingly, Reserve's motion to dismiss is granted.

\*      \*      \*      \*      \*      \*

For the reasons set forth above, defendants' motions to dismiss are granted.

SO ORDERED.

---

4. In fact, as its opposition to Stevedores, Stemcor merely attached its brief opposing Reserve's motion, without changing the parties' names.